IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| BEST MEDICAL BELGIUM, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:12-cv-471 (GBL/TRJ) |
| | ) | |
| THE KINGDOM OF BELGIUM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants The Kingdom of Belgium, Belgium Trade Commission-Wallonia Investment and Trade Office, Robert Baert, Thierry Bosly, and Pierre-E. Cornil's Motions to Dismiss. (Dkt. Nos. 8, 11, 14, 17.) Defendants move to dismiss on the following grounds: lack of subject matter jurisdiction as to the entire action; lack of subject matter jurisdiction, lack of personal jurisdiction, and insufficient service of process to Baert, Bosly, and Cornil ("Individual Defendants"); non-justiciability, forum non conveniens, and improper venue; and failure to state a claim. This case involves breach of contract, unlawful taking, conspiracy, and discrimination claims brought by a Virginia corporation and its Belgian subsidiary against the Kingdom of Belgium, one of its trade offices, and individuals acting pursuant to the Kingdom's judicial functions. Plaintiffs allege jurisdiction over the Defendants pursuant to the Foreign Sovereign Immunities Act ("FSIA") and the Alien Tort Statute ("ATS").

This Motion presents three issues before the Court with respect to subject matter jurisdiction. First, the Court must determine whether the FSIA's commercial exception to sovereign immunity, 28 U.S.C. §§1605(a)(2) (2006), confers jurisdiction over Plaintiffs' breach of contract claims. Second, the Court must determine whether the FSIA's takings exception

confers jurisdiction over Plaintiffs' takings claim and the underlying judicial proceedings. Third, the Court must determine whether the ATS confers subject matter jurisdiction over Plaintiffs' conspiracy and discrimination claims against a foreign state, its trade office, and the decisions of its judicial branch and officers thereunder.

The Court GRANTS Defendant's Motion, finding subject matter jurisdiction lacking as to all Defendants, and thus DISMISSES Plaintiffs' claims with prejudice. The contract-based claims are dismissed because the alleged actions do not demonstrate "commercial activity" required to invoke a FSIA exception. The takings claim is dismissed because Defendants' actions are not a taking subject to judicial review under the FSIA. The ATS claims are dismissed because Plaintiffs fail to plead a violation of international law as required for jurisdiction under the statute.

## I. BACKGROUND

Plaintiff Best Medical Belgium, Inc. ("BMB") brings this action in its own name and in that of Best Medical Belgium, S.A. ("BMBSA"), a foreign corporation Best Medical owned between March 2011 and April 2012. BMB, a Virginia corporation, manufactures and supplies, *inter alia*, radioactive isotopes used for cancer treatments. Compl. ¶ 1. BMBSA was a Belgian corporation known as Nordion prior to BMB purchasing a controlling share of BMBSA stock. *Id.* at ¶¶ 1, 21. BMB initiated this action in April 2012 based on the following series of events.

In November 2010, Krishnan Suthanthiran, BMB's owner and sole shareholder, received an e-mail from an agent of the Belgian Trade Commission–Wallonia Investment and Trade Office, officially known as *Agence Wallonne à l'Exportation et aux Investissements Etrangers* ("AWEX"). *Id.* at ¶ 16. The e-mail described the availability of assistance to foreign investors through the Office for Foreign Investors. *Id.* This office operated under the government of

Wallonia, a region in Belgium, to foster investment in the region. *Id.* Available assistance included benefits of grant schemes, tax regimes, financing arrangements, and other incentives to help establish business investments in Wallonia. *Id.* at ¶¶ 16-19. Additionally, the e-mail contained literature providing promotional information on the benefits of investing in Wallonia. *Id.* at ¶ 17. These documents further detailed examples of subsidies, loans, and other financial assistance for prospective investors. *Id.* at ¶¶ 18-19.

While in Florida in January 2011, Suthanthiran, along with BMB's general counsel and business manager, met with two AWEX representatives regarding investment possibilities. *Id.* at ¶ 20. According to Plaintiffs, these AWEX representatives indicated that the Wallonia Region would provide consulting and financial support and incentives to BMB in return for an investment in Wallonia. *Id.* at ¶¶ 20, 53. These representatives provided a booklet indicating that "investment premiums are awarded to companies that invest in Wallonia and create jobs" and that "Wallonia offers a wide range of subsidies for [research and development] awarded to SME's and large companies with a plant in the region." *Id.* at ¶ 55. Two months later, in late March 2011, BMB purchased a controlling stake in MDS Nordion, S.A, known thereafter as Best Medical Belgium, S.A. *Id.* at ¶ 21.

Financial woes and labor disputes dominated the period of time immediately following BMB's investment in BMBSA. At the time of purchase, BMBSA's losses ranged between six and seven million pounds per year. *Id.* at ¶ 22. Despite these losses, the company retained each of its 95 employees after BMB's acquisition, despite Nordion's intention to lay off 60 employees. *Id.* BMBSA also incurred purchase expenses in an attempt to expand its business. *Id.* Labor woes arose in the summer of 2011. In July, BMBSA disciplined an employee who

exported radioactive material without a license. *Id.* at ¶ 23. Plaintiffs claim Nadine Duquesne, a BMBSA employee, threatened a worker strike in response to the disciplinary action. *Id.* at ¶ 24.

As these financial and labor woes continued into the fall of 2011, BMBSA sought restructuring assistance through the Belgian court system. In October 2011, BMBSA filed for Procedure de Reorganisation Judiciare (PRJ) in The Commercial Court of Charleroi. *Id.* at ¶¶ 4, 25. This procedure permits the courts to assist in restructuring financially struggling companies, similar to bankruptcy proceedings in the United States. *Id.* at 25; Baert Aff. ¶¶ 7-12. The court appointed Robert Baert as the Delegate Judge responsible for BMBSA's restructuring. *Id.* BMBSA subsequently presented a number of restructuring plans, all of which the court ultimately rejected. *Id.* at ¶¶ 26, 39. During this time, BMBSA continued to invest funds into their Belgian business and hire additional employees. *Id.* at ¶ 38. By the end of 2011, BMBSA lost approximately six million pounds since BMB's investment in the company. *Id.*

BMBSA's continued struggles caused the court to take additional action. In January 2012, the Commercial Court appointed two administrators to conduct day-to-day management of BMBSA: Thierry Bosly and Pierre-E. Cornil. *Id.* at ¶¶ 5-6, 39. During January and February, BMBSA presented additional restructuring plans to no avail. *Id.* at ¶ 40. Losses increased to nearly one million pounds per month. *Id.* In March, the Commercial Court ordered the sale of BMBSA's assets upon the recommendation of Baert, Bosly, and Cornil. *Id.* at ¶ 46. The court's order permitted the acceptance of bids on BMBSA assets until April 18, 2012. *Id.* On April 26, 2012, less than two weeks after bidding closed, Plaintiffs initiated this action.

In May 2012, the Belgian court announced various findings concerning suspicious conduct of BMB and indicated the existence of an ongoing investigation of Suthanthiran. Defs.'

Mot. to Dismiss 6. Represented by counsel and heard by the court at this May hearing, neither BMB nor BMBSA appealed the decisions of the Commercial Court. *Id.* at 7.

## II. PROCEDURAL BACKGROUND

Plaintiffs filed a seven-count Complaint on April 26, 2012 in this Court. The Complaint names both BMB and BMBSA as plaintiffs and seeks relief on the following grounds: 1) fraud in the inducement, 2) breach of contract, 3) promissory estoppel, 4) illegal taking of property in violation of international law, 5) conspiracy, 6) breach of duty of loyalty, and 7) discrimination.[1] Plaintiffs claim jurisdiction pursuant to the FSIA for Counts I-IV. Counts V and VII, brought solely by BMBSA, claim jurisdiction pursuant to the ATS.

Counts I-III ("contract claims") seek relief against the Kingdom of Belgium and AWEX. Plaintiffs allege reliance upon the representations of AWEX officials regarding subsidies and investment incentives. Compl. at ¶¶ 59, 63. Plaintiffs further allege the existence of a contract or implied contract based upon promises of financial support and incentives. *Id.* at ¶ 72.

Count IV seeks judgment solely against the Kingdom of Belgium. Plaintiffs allege that the actions of the Individual Defendants amounted to an illegal taking of property. *Id.* at ¶ 81.

Count V seeks relief against the Kingdom of Belgium and Baert, Bosly, and Cornil individually. Plaintiff BMBSA alleges the Individual Defendants, for whom the Kingdom of Belgium is responsible, conspired to take Plaintiff's property in violation of Belgium law. *Id.* at ¶¶ 102-03.

Count VII seeks relief from all defendants, alleging "the only possible explanation for the aforementioned conduct of the Defendants is to discriminate against Plaintiff because of his Asian/Indian ownership." *Id.* at ¶ 127.

---

[1] Duquesne never entered an appearance in this Court and is not party to Defendants' Motions to Dismiss. As a result, neither Defendants' Motions nor this Order address the breach of duty of loyalty claim.

Defendants moved to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, insufficient service of process, non-justiciability, forum non conveniens, improper venue, and failure to state a claim.

### III. DISCUSSION

This Court GRANTS Defendants' Motion to Dismiss for lack of subject matter jurisdiction because the alleged activities do not fall within the FSIA's exception to sovereign immunity or the Alien Tort Statute. Because the Court finds subject matter jurisdiction lacking, the Court does not reach the merits of Defendants' remaining grounds for dismissal.

#### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal where the court lacks jurisdiction over the subject matter of the action. Fed. R. Civ. P. 12(b)(1). In considering a 12(b)(1) motion to dismiss, the plaintiff bears the burden to prove that federal subject matter jurisdiction is proper. *See United States v. Hays*, 515 U.S. 737, 743 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). Lack of subject matter jurisdiction requires dismissal of the action. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

Defendants may attack a complaint through a 12(b)(1) motion in two ways. First, a defendant may present a facial attack upon the complaint where the complaint "fails to allege facts upon which subject matter jurisdiction may be based." *Adams*, 697 F.2d at 1219. In such a case, the court assumes the truth of all facts alleged by the plaintiff. *Id.* Alternatively, a defendant may use a 12(b)(1) motion to attack the existence of subject matter jurisdiction apart from the pleadings. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *White v. CMA*

*Constr. Co.*, 947 F. Supp. 231, 233 (E.D. Va. 1996). In such a case, the court may consider evidence outside the pleadings and regard the pleadings as mere evidence to determine the existence of jurisdiction. *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004). As a result, plaintiff's allegations find no presumption of truth, and a dispute of material facts will not preclude the trial court from evaluating the merits of claims underlying jurisdiction. *U.S. ex. rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).

Subject matter jurisdiction encompasses the scope of sovereign immunity. *Wye Oak Tech., Inc. v. Republic of Iraq*, 666 F.3d 205, 213 (4th Cir. 2009). A motion to dismiss on sovereign immunity grounds requires a court "to satisfy itself of its authority to hear a case" through pretrial legal and factual determinations. *Velasco*, 370 F.3d at 398. The Foreign Sovereign Immunities Act ("FSIA") establishes the presumption that foreign sovereigns are immune from the jurisdiction of the United States courts. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Only the applicability of FSIA's exceptions to sovereign immunity provides subject matter jurisdiction over a foreign state. *Id.* Once a defendant raises a sovereign immunity defense, the plaintiff bears the burden of presenting some evidence establishing the application of an exception. *Velasco*, 370 F.3d at 400-01; *Gerding v. Republic of France*, 943 F.2d 521, 526 (4th Cir. 1991).

The Alien Tort Statute ("ATS") is jurisdictional in nature and also subject to challenge by a Rule 12(b)(1) motion. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 714 (2004). The ATS confers jurisdiction upon the United States courts to hear a limited set of claims presented by aliens against foreign governments for violating the law of nations. *In re XE Services Alien Tort Litigation*, 665 F. Supp. 2d 569, 589 (E.D. Va. 2009). Where a party challenges jurisdiction under the ATS, courts merge Rule 12(b)(1) scrutiny with that of Rule 12(b)(6) to determine

7

whether plaintiffs have properly stated a claim. *Id.* Failure to validly allege a violation of the law of nations within the meaning of the ATS deprives the court of subject matter jurisdiction. *Id.*

### B. Analysis

The Court GRANTS Defendants' Motion because the FSIA and ATS do not confer subject matter jurisdiction over the alleged actions of a sovereign nation and those performing judicial functions for the Belgian courts. The contract claims, Counts I-III, do not fall within the FSIA's commercial activity exception to sovereign immunity because AWEX's promotion of investment in the Wallonia region of Belgium is an act particular to a sovereign state, not a commercial activity under the statute. The takings claim, Count IV, is dismissed because the alleged taking, even if reviewable by this Court, does not rise to a violation of international law required to invoke the FSIA's takings exception. The ATS claims, Counts V and VII, fail because neither claim demonstrates a violation of international law necessary to invoke jurisdiction.

#### 1. Contract Claims

The Court GRANTS Defendants' 12(b)(1) Motion as to Counts I-III because Plaintiffs fail to demonstrate the commercial activity required by the FSIA to pierce sovereign immunity.

The Foreign Sovereign Immunities Act is the sole basis for conferring jurisdiction upon this Court to hear claims against a foreign state. *Samantar v. Yousuf*, 130 S. Ct. 2278, 2286 (2010). Commercial activities, including those involving contracts, may cause a foreign state to fall within one of the FSIA's exceptions to sovereign immunity. 28 U.S.C. §1605(a)(1)-(3) (2006). A foreign state loses sovereign immunity in suits "based upon a commercial activity carried on in the United States by the foreign state; [or] an act performed in the United States in

connection with a commercial activity of the foreign state elsewhere; [or] an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. §1605(a)(2) (2006). The FSIA defines commercial activity as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. §1603(d) (2006). The pertinent inquiry for the court is "whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in 'trade and traffic or commerce.'" *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992). Accordingly, no commercial activity occurs where a foreign state acts in a manner unique to a sovereign. *Id.*

Here, the alleged actions of the Kingdom of Belgium and AWEX—promotion of the Wallonia region and investment incentives—are not a commercial activity available to private parties. Promoting commerce of domestic firms and entities is a "basic—even quintessential—government function," not a private one. *Kato v. Ishihara*, 360 F.3d 106, 111-112 (2d Cir. 2004) (finding that "commercial activity" as defined by the FSIA did not encompass plaintiff's employment as a marketing agent where the defendant provided product promotion and business development assistance and participated in trade shows to promote domestic companies' products). As such, a government instrumentality is "not involved in a 'commercial activity' under the FSIA when it provide[s] general business development assistance, including product promotion, to [businesses in one country] seeking to engage in commerce in [the country engaged in promotion]." *Id.* at 112. Plaintiffs allege that the Kingdom, through AWEX, formed a contract by communicating financial support and tax incentives for those firms who choose to invest in the Wallonia region of Belgium. However, this Court agrees with the *Kato* decision and finds that the purported activities do not invoke the FSIA takings exception. AWEX's

9

actions demonstrate merely the promotion of investment opportunities and incentives within an area of Belgium. This promotional act rests within the purview of a sovereign state, not a private party. As a result, neither AWEX nor the Kingdom of Belgium engaged in commercial activity by communicating opportunities for investment.

Plaintiffs' comparison of AWEX's activities to that of private businesses is unpersuasive. While a private company may send representatives to another country for the sake of promoting *its own* business, the company would not promote other businesses or the country's business in general. *See Kato*, 360 F.3d at 112. An agency organized to promote the interests or commerce of a country or region certainly engages in this type of broad promotion not undertaken by private entities. As such, AWEX's emails and in person discussions should not be construed as anything other than a sovereign act.

Furthermore, even if Defendants' promotional actions were not inherently sovereign activities, the alleged representations present acts unique to sovereign states. Congress intended courts to focus on the basic exchange rather than incidental features of commercial activity; thus, a contract for the sale of goods may fall within the FSIA's exception even if an incidental term invokes sovereign activities. *See Practical Concepts v. Republic of Bolivia*, 811 F.2d 1543, 1548 (D.C. Cir. 1987) (finding commercial activity existed where the "basic exchange" at issue was a sale of goods or services, and the nation's agreement to expedite the entrance of personnel and supplies into the country amounted to merely "facilitating features" of the contract). A different situation arises where an action cites the incidental term as its basis, and such term is one only a government can perform. *Id.* at 1548 n.9 (acknowledging the difference of, without stating an opinion on, a suit against a foreign nation for failing to grant a tax exemption promised in exchange for a sale of goods). In this case, BMB claims that the representations of financial

support, tax incentives, subsidies, and investment premiums induced the subsequent investment into BMBSA. However, if any of those terms involved the grant of a tax exemption or any other incentive only a sovereign government may provide, then such a term removes this exchange from the realm of commercial activity. Private parties cannot guarantee tax schemes or exemptions in exchange for investments or other performance. Accordingly, this Court lacks jurisdiction, even if the promotion of commerce itself was not a sovereign activity, where, as here, Plaintiff relied upon promises which may only be made by a sovereign state.[2]

For these reasons, the Court GRANTS Defendant's Motion to Dismiss Counts I-III for a lack of subject matter jurisdiction.

### 2. The FSIA Takings Exception (Count IV)

The Court GRANTS the Motion to Dismiss Count IV against the Kingdom of Belgium because Plaintiffs' allegations fail to present a taking in violation of international law. Furthermore, this Court lacks the power to pass judgment upon the judicial proceedings and acts of another sovereign.

The FSIA provides a "takings" exception to sovereign immunity in addition to those based on commercial activity. 28 U.S.C. §1605(a)(3) (2006). To establish subject matter jurisdiction pursuant to this exception, a plaintiff must demonstrate each of four elements: 1) the plaintiff's rights in property are at issue; 2) the property was taken; 3) the taking violated international law; and (4) <u>either</u> (a) the taken "property, or any property exchanged for the taken property, is present in the United States in connection with a commercial activity carried on in the United States by the foreign state," *or* (b) the taken "property, or any property exchanged for the taken property, is owned or operated by an agency or instrumentality of the foreign state and

---

[2] Plaintiffs' failure to demonstrate the particular terms of this alleged contract makes this sub-issue ultimately indeterminable. However, as stated above, the claims fail to demonstrate commercial activity.

that agency or instrumentality is engaged in a commercial activity in the United States[.]" *Id.* (emphasis added). For FSIA purposes, an individual acting in his official capacity cannot be an agency or instrumentality of a foreign state. *Samantar*, 130 S. Ct. at 2286. The Court assumes for the purposes of this Motion that Plaintiffs' rights in property—BMBSA assets—are in issue. Even so, Plaintiffs fail to meet the remainder of FSIA's takings requirements.

Plaintiffs fail to demonstrate a taking a property, the second element, because judicial administration and sale of a financially struggling company is not a taking. Expropriation to satisfy a debt declared valid by a foreign court is not a taking for the purposes of the FSIA. *See Amorrortu v. Republic of Peru*, 570 F. Supp. 2d 916, 924 (S.D. Tx. 2008) (explaining that plaintiff's allegation that his property was taken to satisfy a debt upheld by Peruvian courts could not invoke the FSIA "expropriation" exception). In this case, the Belgian court ordered the judicial sale that Plaintiff alleges to be a "taking." This sale occurred after the Belgian court's determination that BMBSA owed significant debt, a finding Plaintiff does not dispute. This Court finds that the *Amorrortu* reasoning is applicable here. As such, the Commercial Court of Charleroi's determination that BMBSA required court-appointed administrators and, eventually, judicial sale counsels against a finding that a taking occurred in this case.

Plaintiffs fail to demonstrate a taking in violation of international law, as a taking by Belgium of BMBSA assets would violate international law. Expropriation by a foreign government of the property of its nationals, even if amounting to a taking, is not a recognized violation of international law. *See de Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385, 1395 (5th Cir. 1985) (declining § 1605(a)(3) jurisdiction over plaintiff's claims that the new Nicaraguan regime refused to cash her certificate of deposit because "international law...does not purport to interfere with the relations between a nation and its own citizens"). This rule follows from the

observation that a domestic injury is resolved within the confines of the nation. *Id.* Thus, even if the Kingdom of Belgium's "actions might have violated international law had they been taken with respect to an alien's property, the fact that they were taken with respect to the intangible property rights of a [Belgian] national means that they were outside the ambit of international law." *Id.* Without a violation of international law, this Court cannot maintain jurisdiction as to any injury to BMBSA under the FSIA.

As an additional matter on the international law violation requirement, exhaustion may also be required before a taking rises to a violation of international law. The FSIA does not present an exhaustion requirement. *See Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 678 (7th Cir. 2012); *Agudas Chasidei Chabad of U.S. v. Russian Federation*, 528 F.3d 934, 948 (D.C. Cir. 2008). Without issuing a definitive statement on such a requirement, the Supreme Court has indicated its willingness to consider an exhaustion requirement for a taking in violation of international law. *Sosa*, 542 U.S. at 733 n. 21. In such a case, a plaintiff may encounter difficulty in showing a violation of international law where post-deprivation remedies have not been exhausted. *Republic of Austria v. Altmann*, 541 U.S. 677, 714 (2004). Here, Plaintiffs fail to demonstrate any such exhaustion in the Complaint. Furthermore, Plaintiffs filed this action less than two weeks after the Commercial Court stopped accepting initial bids on BMBSA assets. BMBSA invoked the jurisdiction of the Belgian court for relief from debt, including reorganization. Thereafter, the Belgian court acted on BMBSA's request and exercised jurisdiction over it and ultimately determined that reorganization was not acceptable and the Court decided to liquidate BMBSA, as the court had the power to decide to do. This Court lacks jurisdiction over claims related to a pending case in a foreign judgment. Additionally, Plaintiffs failed to pursue an appeal in the Belgian court issuing the judgment.

Plaintiffs also fail to demonstrate the fourth element, a nexus between the alleged taking and the United States, through either method available in § 1605(a)(3). As indicated above, the FSIA provides two methods by which a plaintiff must connect the acts of the foreign state to the United States: 1) the taken property must be in the United States in connection with a commercial activity carried on in the United States, or 2) the taken property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States. 28 U.S.C. §1605(a)(3) (2006).

The Complaint fails to establish a nexus by the first method, a conclusion underscored by Plaintiffs' attempt to invoke jurisdiction specifically pursuant to the "owned or operated" clause of § 1605(a)(3). *See* Compl. ¶ 82 (stating "Defendant does not enjoy sovereign immunity...because...property was operated by an agency or instrumentality of the foreign state of Belgium and that agency is involved in commercial activity in the United States"). Even so, an examination of the Complaint fails to reveal allegations sufficient to support the first method of establishing a nexus to the United States. No allegation indicates the presence of the taken property—the assets of BMBSA—in the United States. Additionally, nothing in the Complaint demonstrates such a presence would be connected to commercial activity carried on in the United States.

To the second method of establishing the nexus, Plaintiffs fail to demonstrate ownership of taken property by an agent or instrumentality of Belgium. Whether an entity is an agency or instrumentality turns on whether the entity's function is predominantly governmental or commercial. *Wye Oak*, 666 F.3d at 214. Courts are not an agency or an instrumentality of a government because it is a core governmental function. Furthermore, officers of the courts are not an agency or instrumentality when acting in their official capacity. *See Samantar*, 130 S. Ct.

at 2286. The Complaint alleges the court and the Individual Defendants' management and sale of BMBSA assets constituted a taking. Neither the Commercial Court nor the Individual Defendants are an agency or instrumentality of Belgium. The court is considered the foreign state itself due to its core governmental function, and the individuals acted pursuant to the court's appointment. Thus, even if Defendants' actions constituted a taking—which they do not—the entities who engaged in the taking are not Belgian agencies or instrumentalities. Furthermore, no agency or instrumentality named within the Complaint is alleged to possess or control any property. For these reasons, the jurisdictional nexus required under the FSIA remains unmet.

As an additional, and perhaps most concerning, matter, this Court doubts the existence of jurisdiction to pass judgment upon the acts of a sovereign state. The act of state doctrine limits the power of the United States courts to examine and impugn the acts of another sovereign. *Samantar*, 130 S. Ct. at 2290. As a result, United States courts cannot entertain a suit arising from acts taken by a state official on behalf of that state. *Id.* This case plainly presents a challenge to the acts of a foreign judge and court-appointed administrators. This Court finds unconvincing the Plaintiffs' insistence that the Individual Defendants' allegedly unlawful actions removed them from sovereign immunity. The challenged actions are those of three individuals operating in a capacity as officers of a judicial body in the Kingdom of Belgium. The prudence with which they conducted themselves in their administration of BMBSA and rejection of Plaintiffs' proposed restructuring plans is beyond the jurisdiction of this Court.

For these reasons, the Court GRANTS Defendant's Motion to Dismiss Count IV for a lack of subject matter jurisdiction because Plaintiffs fail to meet the FSIA's requirements establishing the takings exception to sovereign immunity.

## C. The ATS Claims (Counts V & VII)

The Court GRANTS Defendants' Motion as to Counts V and VII because the Alien Tort Statute does not confer subject matter jurisdiction where no violation of international law occurred.[3] The conspiracy claim fails because the alleged taking was performed by Belgium with respect to the property of a Belgian corporation. The discrimination claim fails because racial discrimination, while widely discouraged, fails to rise to the limited set of international law violations contemplated by the ATS.

The Alien Tort Statute confers jurisdiction in the United States courts where an alien brings a civil tort action for a "violation of the law of nations or a treaty of the United States." 28 U.S.C. §1350 (2006). As a jurisdictional matter, a court may consider the existence of a properly stated claim in determining whether the ATS provides the power to hear such claim. *In re XE Services Alien Tort Litigation*, 665 F. Supp. 2d 569, 589 (E.D. Va. 2009). In effect, this merges the analysis of a Rule 12(b)(1) motion with that of a 12(b)(6) motion. *Id.*

In this action, no violation of the law of nations exists to which Plaintiff BMBSA may anchor its allegations of a conspiracy. As noted above, expropriation by a government of the property of its own national is not a violation of international law. *See De Sanchez*, 770 F.2d at 1395; *Jafari v. Islamic Republic of Iran*, 539 F. Supp. 209 (N.D. Ill. 1982) (finding ATS fails to confer jurisdiction where Iranian nationals alleged expropriation of their property by the Iranian government). Count V of this claim has been asserted solely by BMBSA, a Belgian corporation, against the Belgian government and its judicial officers.[4] The domestic nature of the alleged

---

[3] Additionally, the ability of Best Medical, Inc. to represent the claims of BMBSA is in question due to the Belgian court's determination that BMB cannot bring claims on behalf of BMBSA.

[4] BMB would be unable to assert this claim on BMBSA's behalf, as the ATS provides jurisdiction over the claims of aliens, which BMB—a Virginia corporation—is not.

16

taking operates as a bar to this Court's jurisdiction. Therefore, the conspiracy claim cannot stand without an underlying violation present.

With respect to the discrimination claim, Count VII, jurisdiction cannot exist in the absence of a violation of the law of nations. Undoubtedly, racial discrimination is reprehensible and condemned under the laws of many nations. However, racial discrimination rises to a violation of customary law only where "practiced systematically as a matter of state policy." *In re South African Apartheid Litig.*, 617 F. Supp. 2d 228, 250 (S.D.N.Y. 2009); *see also Sarei v. Rio Tinto PLC*, 650 F. Supp. 2d 1004, 1027 (C.D. Cal. 2009). Looking beyond the question of whether the race of BMB's owner supports a claim of discrimination against the company, this Court finds the Complaint devoid of the requisite allegations. Plaintiff BMBSA fails to plead any facts demonstrating a systematic policy by the Belgian government or its court to use race as the basis for discrimination. At best, Plaintiff could only make a case for this one instance of discrimination, rather than a state policy of systematic discrimination against individuals of Indian descent. For this reason, the ATS fails to confer jurisdiction upon this Court for the discrimination claim.

Additionally, the act of state doctrine again gives this Court pause with respect to Counts V and VII. As noted earlier, United States courts lack the power to examine and pass judgment upon the sovereign acts of other countries. *Samantar*, 130 S. Ct. at 2290. With respect to these claims, Plaintiff asks this Court to examine the impact of race upon a judicial decision and the prudence of the Commercial Court's decisions. This Court is not willing to do so, as these acts of the Belgian government are beyond the purview of this Court.

Therefore, the Court **GRANTS** Defendants' Motion to Dismiss Counts V and VII because Plaintiff fails to plead a violation of the law of nations, a requirement to invoke jurisdiction under the ATS.

## IV. CONCLUSION

This Court lacks subject matter jurisdiction over this action because Plaintiffs fail to 1) establish the existence of commercial activity required to invoke the FSIA's exception to sovereign immunity, 2) demonstrate a taking of international law sufficient to trigger the FSIA's exception to sovereign immunity, and 3) demonstrate a violation of international law or the law of nations sufficient to invoke jurisdiction under the ATS. For the foregoing reasons, it is hereby

**ORDERED** that Defendants Kingdom of Belgium, Belgium Trade Commission-Wallonia Investment Office, Robert Baert, Thierry Bosly, and Pierre-E. Cornil's Motion to Dismiss is **GRANTED** for a lack of subject matter jurisdiction. (Dkt. No. 8.) Plaintiffs' claims are hereby **DISMISSED WITH PREJUDICE.** It is further

**ORDERED** that Defendants' remaining Motions to Dismiss are **DENIED** as moot. (Dkt. Nos. 11, 14, 17.)

The Clerk is directed to forward a copy of this Order to counsel.

**IT IS SO ORDERED.**

ENTERED this 20th day of December, 2012.

Alexandria, Virginia
12 / 20 / 2012

/s/
Gerald Bruce Lee
United States District Judge